### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **BENJAMIN OROZCO** | § | |
| | § | |
| **V.** | § | **A-11-CV-703  LY** |
| | § | |
| **CRAIG PLACKIS** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Craig Plackis's Motion to Dismiss Plaintiff's Second Amended Complaint, filed May 31, 2012 (Clerk's Dkt. #57); and Plaintiff's Response to Defendant Craig Plackis's Motion to Dismiss Plaintiff's Second Amended Complaint, filed June 11, 2012 (Clerk's Dkt. #58).  The motion was referred by United States District Judge Lee Yeakel for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.  BACKGROUND[1]

Plaintiffs Benjamin Orozco ("Orozco") brings this action against defendant Craig Plackis ("Plackis").  (Plf. 2nd Am. Compl. ¶¶ 2-3).  Orozco alleges he was employed during the years 2008 through 2011 as a cook at Craig O's Pizza and Pastaria ("Craig O's") in San Marcos, Texas.  (*Id*. ¶ 7).  According to Orozco, Plackis is the founder of Craig O's, which runs six restaurants in Central Texas.  (*Id*. ¶ 9).  He alleges Plackis owns a majority interest in some locations, while others,

---

[1]Because the motion before the Court is made pursuant to Rule 12(b)(6), the Court takes the plaintiff's allegations as true in reviewing the motion.  Consistent with this, the facts set out in this section are based on the contents of the Second Amended Complaint.

including the San Marco location, are owned by other individuals or entities.  (*Id*. ¶ 11).  Orozco

further alleges Plackis was his employer within the meaning of the Fair Labor Standards Act

("FLSA") and the Texas Minimum Wage Act ("TMWA").  (*Id*. ¶ 8).  In support of that allegation,

Orozco argues that at all times relevant to this lawsuit, the Craig O's chain has constituted an

enterprise within the meaning of the FLSA, 29 U.S.C. 203(r), because each of the Craig O's locations

alone, including the San Marcos location, and the amalgamated enterprise have had gross annual

sales in excess of $500,000.  (*Id*. ¶ 10).

Orozco further argues Defendant Craig Plackis was an employer or joint employer of Orozco

within the meaning of the FLSA and the TMWA, and Defendant was subject to the requirements of

those Acts. In support of that argument, Orozco offers the following arguments:

a.   Craig Plackis and the owners of the San Marcos location acted directly and indirectly in the interest of one another in relation to their employees, including the Plaintiff.

b.   Craig Plackis and the owners of the San Marcos location were not completely disassociated from one another with respect to the Plaintiff's employment.

c.   Craig Plackis exercised substantial operational control over and dominated the administration of the enterprise comprised of the Craig O's chain, including the San Marcos location, and had the power to act on behalf of the enterprise, including the San Marcos location, vis-à-vis its employees.

d.   Craig Plackis, or an entity in which he is principal, currently has, or has had in the past, a majority ownership interest in some of the six Craig O's locations, while other locations are owned by other individuals or entities.

e.   Craig Plackis maintains an economic interest in each of the Craig O's locations in which he is not an owner, in that he, or an entity in which he is principal, receives agreed, periodic royalties from the profits of each other location.

f.   Craig Plackis regularly and consistently held meetings, approximately once per month, attended in-person by the individual owners or managers of each

of the Craig O's locations, including the San Marcos location. Between the meetings, Craig Plackis provided constant guidance and oversight by email, telephone, and by making announced and unannounced site visits and inspections. In the meetings, correspondence, telephone calls, and visits, Craig Plackis instructed each of the owners and managers on a variety of matters of general business operations, exercised oversight of employees and employee activities, and directed updates to the chain's practices and procedures, including the subjects described below.

g.　Craig Plackis dictated all material aspects of general business operations at each location in the Craig O's chain, including the San Marcos location, such as: all signage, menu items, recipes, cooking procedures, ingredients, and vendors for all products. Craig Plackis negotiated contracts with vendors and distributors on behalf of the entire Craig O's chain and instructed the individual store owners and managers precisely which products to purchase from whom, with frequent updates and changes.

h.　Craig Plackis regularly and consistently planned and coordinated joint advertising and promotional campaigns between and for the benefit of each of the Craig O's locations, including the San Marcos location, and instructed the individual store owners and managers on how, when, and where to conduct additional advertisement and promotion of their businesses in conformity with the rest of the Craig O's chain.

i.　Craig Plackis regularly and consistently instructed the individual store owners and managers at all locations, including the San Marcos location, on a variety of ways to minimize costs, including such measures as strictly controlling food portions and carefully budgeting labor costs.

j.　Craig Plackis possessed and exercised the authority to inspect, monitor, and instruct, directly and indirectly, the work of the employees of all Craig O's location, including the San Marcos location. For example, Craig Plackis made regular announced and unannounced visits, approximately once per month, to the San Marcos location, in which he monitored the work of all employees, often observing the restaurant's operations for several hours at a time. Then, Craig Plackis often met with and discussed in detail the performance of the English-speaking customer-service employees, drivers and assistant managers; he conveyed instructions to the Spanish-speaking kitchen staff through Sandra Entjer, the owner of the San Marcos location; and he met with Sandra Entjer and discussed at length all of the results of his inspection and instructions for changes and improvements. On occasions when Craig Plackis called and Sandra Entjer was on vacation or not present at the San Marcos location, he complained that she was not diligently

managing the restaurant and should not delegate her responsibilities in such a manner to the assistant managers.

k.      Craig Plackis managed an online system for fielding customers' comments and complaints for all Craig O's locations, including the San Marcos location, and regularly discussed them with the individual owners and managers, giving instructions for improvement.

l.      Craig Plackis possessed and exercised the authority to select and hire managers at other locations, including the San Marcos location, in order to improve the location's performance and ensure conformity with the rest of the chain's practices and procedures. For example, on one occasion Craig Plackis sent one of his own employees to work as an assistant manager at the San Marcos location, then visited the San Marcos location soon after to meet privately with that assistant manager.

m.      Craig Plackis possessed and exercised the authority to change directly or indirectly the terms and conditions of the employment at other locations, including the San Marcos location, such as firing employees and changing work schedules and duties. For example, on one occasion, during a site visit and inspection, Sandra Entjer followed Craig Plackis's instruction to rearrange the schedules and duties of the kitchen staff by terminating a dish washer and assigning the Plaintiff to wash dishes during certain hours, in addition to his other duties.

n.      Craig Plackis possessed and exercised the authority to control directly or indirectly the timekeeping and payroll practices of all Craig O's locations, including the San Marcos location. For example, Craig Plackis selected and set up the timekeeping systems used at each Craig O's location and trained each individual store owner or manager to use them.

o.      Craig Plackis possessed and exercised the authority to control directly or indirectly the general rules and policies applicable to employees of all Craig O's locations, including the San Marcos location. Employees who were trained at one of the locations owned by Craig Plackis needed little or no additional training to work at another location and were paid the same rate.

p.      Multiple Craig O's locations, including the San Marcos location, from time to time shared the services of the same employee. For example, multiple employees have worked, for extended periods of time, one shift at one of the locations owned by Craig Plackis and another shift at another location, including the San Marcos location, totaling well over 40 hours per week

between the two locations without receiving overtime pay. Many other employees have transferred from one Craig O's location to another.

(*Id*. ¶ 11).

Orozco alleges he regularly worked more than forty hours per week in performing his duties as an employee of the defendants, was not paid overtime pay for hours worked in excess of forty hours and in many weeks was paid less than the minimum wage.  (*Id*. ¶¶ 13-14). Orozco further alleges the failure of the defendants to pay him the minimum wage and overtime compensation was willful.  (*Id*. ¶ 15).   In his complaint, Orozco asserts violations of the FLSA for failure to pay him overtime and the federal minimum wage. (*Id*. ¶¶ 17-18).  He further alleges a claim for violating the TWMA for failure to pay him the minimum wage mandated by state law.  (*Id*. ¶ 19).  Plackis previously moved to dismiss Orozco's  First Amended Complaint (Clerk's Dkt. #20), which the undersigned recommended the District Court deny without prejudice to refiling, contingent on the Plaintiff filing an amended complaint.  (Clerk's Dkt. #42).  Orozco subsequently filed his Second Amended Complaint.  (Clerk's Dkt. #44).  Plackis now seeks dismissal of the Second Amended Complaint.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although FED. R. CIV. P. 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic

recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

The Supreme Court has recently made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and  determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950. (quoting FED. R. CIV. P. 8(a)(2)).

### III. ANALYSIS

Plackis seeks dismissal of Orozco's claims under both the FLSA and the TWMA. Specifically, Plackis maintains that (1) Orozco has insufficiently alleged that he was an employee of an enterprise engaged in commerce or in the production of goods for commerce as required for

coverage by the FLSA; (2) Orozco has insufficiently alleged that Plackis was acting as his "employer" or "joint employer" as required for liability under the FLSA; and (3) Orozco cannot allege a violation of the TWMA while also alleging violations of the FLSA according to the TWMA.[2]

## A.     Enterprise Coverage under the FLSA

"The minimum wage and overtime provisions of the FLSA apply to employees of 'an enterprise engaged in commerce or in the production of goods for commerce.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969 (5th Cir. 1984) (quoting 29 U.S.C. §§ 206, 207).  In pertinent part, the FLSA defines an "enterprise" as:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements . . .

29 U.S.C. § 203(r)(1).  The three main elements to find existence of an "enterprise" are (1) related activities, (2) unified operation or common control, and (3) common business purpose.  *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994).

Noting the FLSA does not define these elements, the Fifth Circuit has looked to the Code of Federal Regulations to further define them.  In *Reich*, the court stated:

> activities will be regarded as 'related' when they are the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business . . . . The Senate Report on the 1966

---

[2]Plaintiff states in his Response that he seeks to incorporate the arguments from his Objections to Report and Recommendation of the Magistrate Judge and Responses to Defendant's Objections (Clerk's Dkt. #45) in his response, and the Court has therefore considered those arguments in making this report and recommendation.

amendments makes it plain that related, even if somewhat different, business activities can frequently be part of the same enterprise, and that activities having a reasonable connection with the major purpose of an enterprise would be considered related.

*Reich*, 23 F.3d at 114 (quoting 29 C.F.R. § 779.206). Regarding "common control" the court stated:

The word "control" may be defined as the act of fact of controlling; power or authority to control; directing or restraining domination. "Control" thus includes the power or authority to control . . . [It] includes the power to direct, restrict, regulate, govern, or administer the performance of the activities. "Common" control includes the sharing of control and it is not limited to sole control or complete control by one person or corporation. "Common" control therefore exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.

*Reich*, 23 F.3d at 114-15 (quoting 29 C.F.R. § 779.221). A common business purpose exists if "the separate corporations engaged in complementary businesses, and were to a significant degree operationally interdependent." *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530 (5th Cir. 1982).

Plackis argues Orozco's Second Amended Complaint does not provide any factual allegation that Plackis performed related activities for a common business purpose with any other entity, but at most alleges only that Plackis exercised substantial operational control over the administration of the enterprise. Plackis points out that he does not own the restaurant where Orozco alleges he worked. He also argues that, even if Orozco alleged facts indicating that Plackis participated in an enterprise that employed Orozco, Orozco's complaint should still be dismissed because Plackis falls under an exception to the definition of enterprise under the FLSA, which states in pertinent part:

a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which included, but is not necessarily limited to, an agreement, (A) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (B) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (C) that it will have the exclusive right to sell the goods or use the brand name of a

manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments.

29 U.S.C. § 203(r)(1).

The Court concludes that Orozco's complaint contains sufficient factual allegations that Orozco was an employee of an enterprise that included Plackis for the purposes of the FLSA. Orozco has alleged that Plackis conducted the following activities for the San Marcos Craig O's location: held meetings attended by the owners or managers; dictated the signage, menu items, recipes, cooking procedures, ingredients, and vendors for all products; negotiated contracts with vendors and distributors; instructed the store owners and managers precisely which products to purchase from whom; planned and coordinated joint advertising and promotional campaigns; made monthly visits to monitor employees; met with and discussed in detail the performance of the English-speaking customer-service employees, drivers and assistant managers; conveyed instructions to the Spanish-speaking kitchen staff; managed an online system for fielding customers' comments and complaints; selected managers; sent one of his own employees to work as an assistant manager; instructed owners and managers regarding firing employees and changing work schedules and duties, including one incident in which Plackis instructed the San Marcos location to terminate a dish washer and assign Orozco to wash dishes; selected and set up the timekeeping systems and trained the store owners or managers to use them; shared the services of the employees between different Craig O's locations. (Plf. 2nd Am. Compl. ¶ 11).

Regarding related activities, Orozco sufficiently alleges that Plackis was engaged in related activities as the allegations include "purchasing" and "advertising" among many other activities "necessary to the operation and maintenance of the particular business." *Reich*, 23 F.3d at 114.

Regarding unified operation or common control, Orozco sufficiently alleges Plackis had the "power to direct, restrict, regulate, govern, or administer the  performance of the activities" given the allegations that Plackis directed advertising, purchasing, and personnel decisions. *Id.* Regarding common business purpose, Orozco alleges that Plackis and the San Marcos Craig O's jointly engaged in advertising; purchasing; personnel evaluation, placement, hiring, and firing; and personnel sharing—Orozco even alleges that on one occasion Plackis personally changed Orozco's work assignment. Thus, Orozco sufficiently alleges facts demonstrating Plackis and Orozco's direct employer "engaged in complementary businesses, and were to a significant degree operationally interdependent" given the significant control Plackis is alleged to have had over so many aspects of the activities of the San Marcos Craig O's. *Janitorial Servs., Inc.*, 672 F.2d at 530.  Accordingly, Orozco sufficiently alleges Plackis was part of an enterprise that employed Orozco for the purposes of the FLSA.

Regarding whether Plackis should fall under the 29 U.S.C. § 203(r)(1) exception to enterprise coverage under the FLSA, the part of the Code of Federal Regulations ("CFR") governing the FLSA as applied to retailers of goods and services states, "Congress recognized that some franchise, lease, or other arrangements have the effect of creating a larger enterprise and whether they do or not depends on the facts."  29 C.F.R. § 779.230(a). The CFR continues:

> While it is clear that in every franchise a businessman surrenders some rights, it equally is clear that every franchise does not create a larger enterprise. In the ordinary case a franchise may involve no more than an agreement to sell the particular product of the one granting the franchise. It may also prohibit the sale of a competing product. Such arrangements, standing alone, do not deprive the individual businessman of his "control" so as to bring him into a larger enterprise with the one granting the franchise.

Where the franchise arrangement results in vesting control over the operations of the dealer's business in the one granting the franchise, the result is to place the dealer in a larger enterprise with the one granting the franchise. . . . [T]he following example illustrates a franchising company and independently owned retail establishments which would constitute a single enterprise:

> (1) The franchisor had developed a system of retail food store operations, built up a large volume of buying power, formulated rules and regulations for the successful operation of stores together constituting a system which for many years proved in practice to be of commercial value to the separate stores; and

> (2) The franchisor desired to extend its business through the operation of associated franchise stores, by responsible persons in various localities to act as limited agents, and to be parts of the system, to the end that the advantages of and the profits from the business could be enjoyed by those so associated as well as by the franchisor; and

> (3) The stores were operated under the franchise as part of the general system and connected with the home office of the franchisor from which general administrative jurisdiction was exercised over all franchised stores, wherever located; and

> (4) The stores operated under the franchise agreement were always subject to the general administrative jurisdiction of the franchisor and agreed to comply with it; and

> (5) The stores operated under the franchise agreed to install appliances, fixtures, signs, etc. according to plans and specifications provided by the franchisor and to purchase their merchandise through the franchisor except to the extent that the latter may authorize local purchase of certain items; and

> (6) The stores operated under the franchise agreed to participate in special promotions, sales and advertising as directed by the franchisor, to attend meetings of franchise store operators and to pay a fee to the franchisor at the rate of one-half of 1 percent of total gross sales each month for the privileges to them and the advantages and profits derived from operating a local unit of the franchisor's system; and

> (7) The franchisor under the franchise agreement had the right to place on a prohibited list any merchandise which it considered undesirable for sale in a franchise store, and the stores operated pursuant to the franchise agreed to immediately discontinue sale of any such blacklisted merchandise.

29 C.F.R. § 779.232.

Here, Orozco alleges Plackis developed a system of retail food store operations where the stores were operated under a franchise as part of a general system whereby the stores agreed to install appliances, fixtures, and signs according to plans and specifications provided by Plackis, who also directed the purchasing of the stores' merchandise. Orozco also alleges the stores participated in special promotions, sales and advertising as directed by Plackis, who conducted meetings for the stores' operators. These allegations are substantially similar to the illustration in 29 C.F.R. § 779.232 of a franchising company and independently owned retail establishments which would constitute a single enterprise. Thus, at least at the motion to dismiss level, Orozco has alleged sufficient facts to demonstrate that Plackis does not fall under the 29 U.S.C. § 203(r)(1) exception to enterprise coverage under the FLSA.

## B.    Employer Liability under FLSA

Regarding FLSA liability for employers, the Fifth Circuit has held:

> The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA's definition of employer must be liberally construed to effectuate Congress' remedial intent. *Sabine Irrigation*, 695 F.2d at 194. . . . The FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Id.* at 194-95; *see also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (observing that an individual qualifies as an employer if he "independently exercised control over the work situation").

*Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). In this case, Orozco has alleged that Plackis acted directly in the interest of Craig O's in relation to employees in general and Orozco in particular. Though Plackis lacks a possessory interest in the San Marcos Craig O's,

Orozco alleges Plackis acts on behalf of the corporation vis-a-vis its employees.  Namely, Orozco has alleged that Plackis evaluates personnel performance, directs firing and hiring decisions, determines work assignments, and shares personnel with the San Marcos Craig O's.  Such behavior would demonstrate that Plackis independently exercises control over the work situation at the San Marcos Craig O's.  Thus, Orozco has pled sufficient facts to state a claim against Plackis under the FLSA as Orozco's "employer."

## C.      Liability under TWMA

Plackis contends Orozco is not entitled to relief under the TWMA because that statute does not apply to a person covered under the FLSA.  *See* TEX. LAB. CODE ANN. § 62.151 (Vernon 2006) ("This chapter . . . do[es] not apply to a person covered by the Fair Labor Standards Act of 1938").  Orozco does not disagree the TWMA contains such a restriction.  Instead, he maintains his claim under the TWMA is meant to be an alternative claim.  A party is clearly entitled to assert alternative claims.  FED. R. CIV. P. 8(d) (party may state as many separate claims as it has, regardless of consistency).  Given that Plackis contends that he is not a proper defendant in a FLSA claim, it is appropriate for Orozco to pursue this alternative claim.  Plackis is thus not entitled to dismissal of Orozco's TWMA claim on this basis.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** Defendant Craig Plackis' Motion to Dismiss Plaintiff's Second Amended Complaint, filed May 31, 2012 (Clerk's Dkt. #57).

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3ʳᵈ day of July, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE